# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ARMANDO RIJOS CARDONA and
ANGEL OMAR COTTO PADILLA,**

   **Plaintiffs,**

   **v.**

**BERNARDO MARQUEZ GARCIA, et al.**

   **Defendants.**

**Civil No. 21-1028 (ADC)**

## OPINION AND ORDER

   Before the Court is defendants Bernardo Márquez-García ("Márquez") and Ángel R. Hernández-Pérez's ("Hernández" and together with Márquez, "defendants") motion for summary judgment and accompanying statement of uncontested material facts. **ECF Nos. 54** and **55**. Defendants seek summary judgment denying plaintiffs Armando Rijos-Cardona ("Rijos") and Ángel Omar Cotto-Padilla's ("Cotto" and together with Rijos, "plaintiffs") political discrimination claims on the basis that they had a valid, non-discriminatory reason to refrain from renewing plaintiffs' transitory employment contracts with the Municipality of Toa Baja, Puerto Rico ("Municipality"). They also seek dismissal of plaintiffs' claim that they were terminated in violation of local electoral law.

   For the reasons stated below, defendants' motion for summary judgment is **DENIED** as to plaintiffs' political discrimination claims but **GRANTED** as to the dismissal of plaintiffs' claims relating to violation of local electoral law.

## I.      Procedural Background

On January 19, 2021, plaintiffs initiated the above-captioned case against Márquez, Hernández, and María T. Camacho ("Camacho"). **ECF No. 1**. Plaintiffs alleged that Márquez, as Mayor of the Municipality, "started a discriminatory and retaliatory course of action against the [plaintiffs] that ended in [plaintiffs] losing [their] job[s]." **ECF No. 1** at ¶¶ 13, 23. According to plaintiffs, this was due to their political support for Márquez's primary opponent. Plaintiffs alleged that Hernández and Camacho were at the time directors of the Municipality's Legal and Human Resources Departments, respectively. *Id.*, at ¶¶ 6, 7.

On July 12, 2021, defendants and Camacho moved to dismiss the complaint. **ECF No. 15**. Plaintiffs then amended the complaint on July 26, 2021, and, among other things, removed Camacho as a party. **ECF No. 16**.[1]

The amended complaint contains two causes of action. The first cause of action seeks damages under 42 U.S.C. § 1983 and alleges that defendants' decision not to renew plaintiffs' transitory employment contracts amounts to political discrimination and violates their First Amendment rights to free speech and free association. *Id.*, at ¶¶ 31-34. Plaintiffs' second cause action relates to the timing of their "termination," which they allege was contrary to Puerto Rico

---

[1] As defendants point out, Camacho remained as a defendant in the amended complaint's caption but was nonetheless removed as one of the listed defendants identified in the complaint's "Parties" section. *See* **ECF No. 16** at 2. There are no allegations directed against Camacho in the amended complaint. The Court thus considers plaintiffs' claims against Camacho, to the extent there were any in the original complaint, to have been voluntarily dismissed.

electoral law because it took place within the two-month period before the Puerto Rico 2020 general elections. *Id.*, at ¶¶ 35-36.

Defendants answered the amended complaint on August 20, 2021. **ECF No. 18**. For the next two years, the parties engaged in an often-interrupted discovery process, requesting a total of five extensions of time to conclude it. *See* **ECF Nos. 22, 25, 32, 37,** and **42**. On February 15, 2023, the Court granted a final extension of time and warned the parties that they were "on notice that any further requests for extensions will be denied." **ECF No. 43**. It further set deadlines for the filing of dispositive motions and oppositions thereto, the latter of which were to be due 30 days after the motion. *Id.* Upon defendants' request, on June 5, 2023 the Court extended the deadline for filing dispositive motions to June 30, 2023 and set the deadline for oppositions to July 28, 2023—double the time afforded by the Local Rules for such filings. *See* **ECF No. 50**; L. Civ. R. 7(b). The Court unambiguously warned the parties that "no further extensions of time will be granted and that failure to comply with this deadline will result in the waiver of the right to file and/or oppose any dispositive motion." **ECF No. 50**.

Defendants filed their motion for summary judgment and statement of uncontested material facts by the Court-set deadline on June 30, 2023. **ECF No. 54** and **55**, respectively. Plaintiffs mistakenly thought that they had until July 14, 2023, to oppose the motion and requested an extension up and until August 14, 2023. *See* **ECF No. 57** at 1 ("Movants must answer said motion by July 14, 2023."). The Court promptly denied the request a day later, on July 12, 2023, stating: "The deadline to oppose defendant's motion for summary judgment

expires on July 28, 2023, as per the Court's order at ECF No. 50. The Court reiterates its warning to the parties that failure to comply with this deadline will result in the waiver of the right to oppose the motion." **ECF No. 60**.

The deadline for plaintiffs to oppose the motion came and went without an opposition. Defendants then filed a motion to deem their motion for summary judgment unopposed, highlighting the Court's previous warnings about the consequences of missing deadlines. **ECF No. 62**. Exactly a week later, plaintiffs appeared and filed an opposition to the motion for summary judgment, attaching an opposing statement of uncontested material facts which addressed defendants' statement and provided additional facts for the Court's consideration. **ECF Nos. 63** and **63-17**, respectively. As to their failure to abide by the Court-imposed deadline, plaintiffs filed a two-page motion wherein they allege that they "could not prepare the opposition in good faith in the time provided by the Honorable Court in part due to an oral argument in US v. Chéveres Morales argued before the First Circuit Court of Appeal on July 28, 2023." **ECF No. 65** at 1. Plaintiffs further asked the Court that if it were to "punish" anyone, it should impose economic sanctions on their attorneys "rather than… consider[ ] Defendants' motion unopposed." *Id*., at 2.

Defendants filed a reply in support of their motion for summary judgment as well as a response to the opposing statement of material facts on September 7, 2023. **ECF Nos. 70** and **71**, respectively. Predictably, defendants rejected plaintiffs' proffered excuses as insufficient cause and inexcusable neglect and asked the Court to strike the untimely opposition. **ECF No. 70** at 2-

3. Nevertheless, defendants went through the trouble of addressing plaintiffs' arguments and of responding to each of the facts and refutations put forth by plaintiffs.

## II.   Legal Standard

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Sands v. Ridefilm Corp.,* 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and it is "material" if it potentially affects the outcome of the case. *See Calero-Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004); *Murray v. Warren Pumps, LLC,* 821 F.3d 77, 83 (1st Cir. 2016) (citations omitted); Fed. R. Civ. P. 56(a). Although the court states the facts in the light most favorable to the party against whom summary judgment is entered, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.,* 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.,* 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

In order to defeat a properly supported motion for summary judgment, the non-moving party must set forth facts showing that there is a genuine dispute for trial. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). L. Civ. R. 56(c) states, in pertinent part, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." *Id.*  Moreover, L. Civ. R. 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." The nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

"When a non-moving party fails to file a timely opposition to an adversary's motion for summary judgment, the court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion." *Pérez-Cordero v. Wal-Mart Puerto Rico*, 440 F.3d 531, 533-34 (1st Cir. 2006) (citing *NEPSK, Inc. v. Houlton,* 283 F.3d 1, 7-8 (1st Cir. 2002)). Nonetheless, the Court must still scrutinize the summary judgment motion under the terms of the Federal Rules of Civil Procedure but, "[i]n most cases, a party's failure to oppose summary judgment is fatal to its case." *Id.* at 534.

III.   **Discussion**

   **A. Plaintiffs' untimely opposition.**

At the threshold, the Court must address the untimely filing of plaintiffs' opposition to defendant's motion for summary judgment and their attorneys' neglectful failure to comply with a clear and unambiguous Court-ordered deadline.

Plaintiffs are represented by two seasoned members of the bar, attorneys John A. Stewart-Sotomayor and John E. Mudd. As recounted above, plaintiffs were twice warned that that the failure to comply with the Court-appointed deadline to file and oppose dispositive motions would result in the waiver of such right. **ECF No. 50** and **60**.[2] The second time, plaintiffs were denied a requested extension—up to August 14, 2023—to oppose the motion in part because it was based on the erroneous belief that their opposition was due more than two weeks before the July 28 deadline. *See* **ECF No. 57** at 1 ("Movants must answer said motion by July 14, 2023."). Even though plaintiffs were candid in the reason for their request—that co-counsel Stewart-Sotomayor was at the time (July 11, 2023) on a trip to Guadalajara, Mexico—nothing was said of Stewart-Sotomayor's return date or of co-counsel Mudd's inability to comply with the opposition deadline. Thus, the Court quickly denied the request the day after plaintiffs filed it and reiterated, for their benefit, the correct deadline as well as the consequences for missing it. **ECF No. 60**. This, in the apparently vain hope that plaintiffs' counsel would quickly realize that

---

[2] These deadlines, moreover, were set at the request of the parties. *See* **ECF Nos. 47**, **49**, and **50**.

they were mistaken in their understanding of the Court's deadlines and that they still had more than two weeks to prepare and file their opposition.

Despite having a full 28 days to oppose the motion—twice the amount allotted by L. Civ. R. 7(b)—plaintiffs failed to do so. Only on August 11, 2023, did they file their untimely opposition and opposing statement of facts. **ECF No. 63** and **63-17**. Plaintiffs' counsel proffered the following as their reasons for their failure and tardiness:

> Plaintiffs… could not prepare the opposition in good faith in the time provided by the Honorable Court in part due to an oral argument in *US v. Chéveres Morales* argued before the First Circuit Court of Appeals on July 28, 2023. As the Court is aware, preparation for these oral arguments takes time. Plaintiffs prepared the opposition as quickly as they could, and have presented it today…. Defendants presented over 60 statements that they claimed were uncontested and the process of reviewing them in the context of the several depositions taken is very time consuming.

**ECF No. 65** at 1-2.

The Court's review of the appellate docket of *United States v. Chéveres-Morales*, No. 20-1245 (1st Cir.) shows that counsel Mudd was appointed as counsel there on June 29, 2023, nearly two weeks before plaintiffs' request for extension of time. But no mention of such appointment or of an upcoming appellate argument was included in the request. Moreover, there is no indication that co-counsel Stewart-Sotomayor (assuming he had returned from his trip abroad) was in any way involved in this appeal.

Under Fed. R. Civ. P. 6(b)(1), the Court may "for good cause" extend the time to perform an act, such as filing an opposition. When the deadline to do so has elapsed, the movant must

demonstrate not only good cause, but also that its omission was due to excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). The Court is not convinced that attorney Stewart-Sotomayor's absence or attorney Mudd's appellate argument constitute either good cause or excusable neglect. After all, the parties were under advisement of the filing deadlines and the consequences for missing them from as far back as June 5, 2023. **ECF No. 50**. Either attorney Stewart-Sotomayor or attorney Mudd could have better apprised the Court of their difficulties in complying with the opposition deadline, and both certainly should have done so after the Court's prompt denial of their request for an extension. The Court cannot conclude that their neglect to do so was excusable.

Had the Court been informed of attorney Stewart-Sotomayor's return date and of attorney Mudd's pending appellate oral argument, it may have reached a different decision on their request for an extension. Unfortunately, that was not so. The Court will not penalize plaintiffs for their attorneys' neglect; but attorneys Stewart-Sotomayor and Mudd are hereby **ORDERED** to pay $1,000.00 each as a sanction within 14 days of the issuance of this Opinion & Order. Attorneys Stewart-Sotomayor and Mudd are sternly reminded of their duties of diligence and candor to the Court.[3]

Accordingly, defendants' requests to consider their motion for summary judgment unopposed (**ECF No. 62**) and to strike the response to the statement of uncontested material

---

[3] Plaintiffs should be aware that their case survives summary judgment in great part because the Court has elected to consider their untimely opposition instead of striking it, taking the route of monetary sanctions on their attorneys as an alternative. Plaintiffs' case, as it was presented to the Court here, is far from convincing given its heavy reliance on evidentiary inferences and self-serving testimony. Had the Court done what it was entirely within its right to do and disregarded the opposition altogether, it would have granted defendants' motion in full.

facts, included in defendants' reply (**ECF No. 70**), are **DENIED**. The Court will proceed to consider defendants' motion for summary judgment with the benefit of plaintiffs' opposition and defendants' reply.

### B. Factual findings.

The Court draws the following factual findings from the well-pleaded facts of the complaint and the statements of proposed facts submitted by the parties that comply with L. Civ. R. 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Although the Court reviewed every statement submitted by the parties, it will only consider and include in this Opinion & Order those facts that are material for purposes of summary judgment as mandated by Fed. R. Civ. P. 56. Any proposed fact not included below is to have been deemed immaterial.

### 1. Plaintiff Cotto.

Plaintiff Cotto was appointed on a transitory basis to the position of Office Systems Technician in the Municipality's Office of Legal Affairs on January 16, 2018. **ECF No. 55** at ¶ 12. His contract was renewed on a monthly basis. *See* Tr., Deposition of Mayor Bernardo Márquez-García, **ECF No. 63-5** at 46:18-22.[4] When Cotto started working there, the office was composed only by Diana Martínez, who was the office secretary, and Hernández, who was the Director of

---

[4] The Court may consider materials not cited by either party if they are on the record. *See* Fed. R. Civ. P. 56(c). Although not proposed as a statement of fact by either party, Márquez testified in his deposition that plaintiffs' "appointments" were on a "monthly basis," which the Court takes to mean that their transitory employment contracts were renewed on a monthly basis.

the Office of Legal Affairs. *Id.,* at ¶ 15. Hernández was involved in the Márquez mayoral campaign of 2016 and then went on to serve as the Municipality's main legal advisor. **ECF No. 63-17** at 17, ¶¶ 17, 19, 20. Hernández was Cotto's supervisor and was still in his position as director in 2020. **ECF No. 55** at ¶ 16.

Sometime in 2018, Cotto supported Toa Baja mayoral candidate Edwin Miranda-González, who was at the time running in the primary election against the incumbent, defendant Márquez. **ECF No. 63-17** at 15, ¶ 4. In November 2018, Cotto had a formal meeting with Márquez to discuss a promotion request he submitted through a letter dated November 7, 2018. *Id.,* at ¶ 6. According to Cotto, Márquez knew that Cotto supported his rival in the primary race. *Id.,* at ¶ 5. Cotto remembers that Márquez asked him during this meeting why he was supporting his opponent and told him that he was expecting to be with people who supported him. *Id.,* at 15-16, ¶¶ 7, 9. In the end, Márquez told Cotto that he would work on his request for a promotion. *Id.,* at ¶ 7. Despite what was said in the meeting, Cotto's transitory employment contract was renewed. **ECF No. 55** at ¶ 14.

Sometime in June 2019, Cotto met with Hernández and Municipal Administrator Michael Rivera in the Mayor's Office. **ECF No. 63-17** at 16, ¶ 10. Mr. Rivera, as Municipal Administrator, held a position of trust and had been in that position since 2018. **ECF No. 55** at ¶ 58; **ECF No. 63-17** at 17, ¶ 16. According to Cotto, Mr. Rivera told him during this meeting that the position that he wanted to be promoted to was especially created for him but that he would not get it because of his negative attitude. **ECF No. 63-17** at 16, ¶ 10. In addition, Mr. Rivera told Cotto

that those who did not support Márquez in the mayoral race were being retaliated against by being "taken out of the municipality" or not being hired. *Id.*, at ¶ 11.

### 2. Plaintiff Rijos.

Plaintiff Rijos began working for the Municipality as a transitory employee on February 16, 2018. **ECF No. 55** at ¶ 1. Rijos was initially appointed to the position of Executive Officer in the Mayor's Office. *Id.*, at ¶ 2. Part of his duties there consisted of giving lectures on addiction, alcoholism, and homelessness at schools and elsewhere. **ECF No. 63-17** at 14, ¶ 1.

In April 2018, Rijos started working as the director of the political campaign of Mr. Miranda-González. Mr. Miranda-González was running against defendant Márquez, the incumbent mayor, in the primary election for the mayoral candidacy. *Id.*, at 14, ¶ 2. According to Rijos, Márquez approached him on more than one occasion and told him that he could not support Miranda-González. *Id.*, at 15, ¶ 2.

On July 24, 2018, Rijos received a warning letter from Camacho, accusing him of neglecting his duties and spending his time visiting various department heads without a job-related reason. Rijos denied the allegations. *Id.*, at 15, ¶ 3. At the time, Camacho was an Administrative Assistant at the Mayor's Office. **ECF No. 55** at ¶ 53.

A year later, on July 22, 2019, Rijos was transferred to the Office of Legal Affairs. *Id.*, at ¶ 3. He did not suffer a pay cut when he was assigned to his new position. *Id.*, at ¶ 4. Rijos' transitory employment contract was consistently renewed on a monthly basis from 2018 up to

August 2020. *Id.*, at ¶ 5; Tr., Deposition of Mayor Bernardo Márquez-García, **ECF No. 63-5** at 46:18-22.

### 3. Plaintiffs' duties in the Office of Legal Affairs.

The composition of the Office of Legal Affairs changed when Rijos became part of the office. **ECF No. 55** at ¶ 17. Luis Santiago began working there as Legal Technician after Rijos' arrival. *Id.*, at ¶¶ 18, 19. Mr. Santiago worked directly with Hernández. *Id.*, at ¶ 20. Diana Martínez remained as secretary. *Id.*, at ¶ 19.

Rijos carried out essentially the same duties as Cotto. *Id.*, at ¶ 21. When individuals went and needed services related to the Office of Legal Affairs, Rijos and Cotto would attend and interview them. *Id.* These duties were different from the ones Rijos performed while in the Mayor's Office. **ECF No. 55** at ¶ 21; **ECF No. 63-17** at 2-3, ¶ 21. Cotto does not recall Márquez asking Rijos about the political candidate he supported. **ECF No. 55** at ¶ 22.

### 4. COVID-19 and the Municipality's response.

The Municipality shut down in March 2020 due to the COVID-19 pandemic and only operated essential services. **ECF No. 55** at ¶¶ 23, 30. During this period, municipal employees had to stay in their homes and did little to no work but were still getting paid. *Id.*, at ¶ 31.

At the time, in 2020, Hernández had four employees in the Office of Legal Affairs: Diana Martínez (who was a permanent employee), Luis Santiago, Rijos, and Cotto. *Id.*, at ¶ 34. The last three were all transitory employees. *Id.*

During the COVID-19 pandemic, the three transitory employees of the Office of Legal Affairs remained in their homes, and the office was run only by Hernández who dealt with emergency situations, like meetings with hospital and laboratories and the preparation of municipal ordinances. *Id.*, at ¶ 35. While Hernández was doing everything at the office, Mr. Santiago helped him with contract revisions and the preparation of documents from his laptop at home. *Id.*, at ¶ 36.

On the other hand, during the first months of the pandemic, neither Rijos nor Cotto performed any work for the Municipality. *Id.*, at ¶¶ 24, 37. Hernández started looking for things he could assign to Cotto and Rijos. *Id.*, at ¶ 38. From May to August 2020, he assigned Cotto to help give out lunches to citizens in a school, but Cotto did not perform any other work for the Office of Legal Affairs during that time. *Id.*, at ¶¶ 25, 26.[5] Rijos never performed any work for the Office or the Municipality during the pandemic. *Id.*, at ¶¶ 6, 7, 38.

**5.  The decision to desist from renewing transitory employment contracts.**

During the pandemic, a concern arose in a staff meeting in the Municipality about how to justify the continuing renewal of transitory employee contracts in light of the situation. **ECF No. 55** at ¶ 31. The Municipality was concerned about the possibility of adverse audit findings by the Commonwealth of Puerto Rico's Comptroller's Office, which oversees municipalities. *Id.* at ¶ 32. The Municipality worried that it would receive a negative finding for renewing contracts

---

[5] It is not clear exactly how long Cotto was performing this duty, but at the time Hernández made the recommendation not to renew his contract, he had ceased this function. **ECF No. 55** at ¶ 39.

for transitory employees when there was no need for their services and had no assigned tasks for them throughout much of 2020. *Id*.

The decision not to renew transitory employment contracts was a team decision, made by Márquez based on the recommendations provided by the municipal department directors. *Id.*, at ¶¶ 40, 45, 46, 47. At different meetings, the department directors had indicated that the need for transitory employees had decreased during the COVID-19 pandemic. *Id.*, at ¶ 60. Márquez relied on this position when he took the decision not to renew transitory employment contracts. *Id.*, at ¶ 47. Once the decision was made, each department director was to identify the transitory employees within their department that were not performing any tasks at all or whose services were not needed. *Id.*, at ¶ 41.

Between July and August 2020, Municipal Administrator Michael Rivera gave Camacho the parameters of what should be considered by the department directors to determine whose contracts would not be renewed. *Id.*, at ¶¶ 56, 60, 61. Camacho told the directors that they were to evaluate the employees, their assistance, and if they were carrying out the duties of their positions. *Id.*, at ¶ 57. Once Camacho received from the directors the names of the individuals whose contracts would not be renewed, she provided those names to Mr. Rivera. *Id.*, at ¶ 55.

At the time, Camacho was a Special Assistant in the Mayor's Office and throughout 2020, she acted as a liaison to the Municipality's Human Resources Department. **ECF No. 63-17** at 16,

¶ 14; *see also* Tr., Deposition of María T. Camacho-De Jesús, **ECF No. 63-14** at 17:2-20.[6] She acted

as Interim Director of the Human Resources Office when the Director, Frances García-Ayala,

was absent. **ECF No. 55** at ¶ 54. She was deeply involved in the work of that office in the year

2020. **ECF No. 63-17** at 17, ¶ 15.

Hernández was instructed to identify transitory employees that were not performing any

functions. **ECF No. 55** at ¶ 33. Hernández gave his recommendation to Camacho. *Id.*, at ¶ 42. He

recommended that Cotto's and Rijos's transitory employment contracts be allowed to expire

without being renewed. *Id.* Both Cotto's and Rijos' respective appointments were to expire on

August 31, 2020. *Id.*, at ¶¶ 8, 27.

The municipal budget for 2021 was completed and went into effect in July 2020. *Id.*, at ¶¶

62, 63. The 2021 budget included payment for transitory employees, although it is not clear

whether it factored in the contemplated transitory employee reduction or not. *See* Tr.,

Deposition of Mayor Bernardo Márquez-García, **ECF No. 63-5** at 46:11-17. At the time, the

Municipality did not know if the CARES Act would reimburse wages of persons not performing

duties or tasks related to the emergency. **ECF No. 55** at ¶ 44. According to Jacqueline Feliciano-

Archilla, Executive Assistant to the Mayor in the Administrator's Office, in July 2020, the

Coronavirus Relief Fund provided reimbursement to municipalities for COVID tests, personal

protection equipment, and communications, *Id.*, at ¶¶ 48, 49, 50. Only in December 2020 were

---

[6] *See* Fed. R. Civ. P. 56(c) ("The Court need consider only the cited materials, but it may consider other materials in the record.").

municipalities allowed to reimburse payroll expenses from March to December 2020, but only for employees who were in either the public safety or public health categories. *Id.*, ¶ 51.

### 6.  Plaintiffs are notified of the decision not to renew their contracts.

The decision as to which transitory employees would not have their contracts renewed was taken in August 2020. **ECF No. 55** at ¶ 44. That month, both Cotto and Rijos were informed that their contracts would not be renewed. **ECF No. 63-17** at 16, ¶ 8. Specifically, Cotto learned this on August 28, 2020. **ECF No. 55** at ¶¶ 27, 28. Cotto does not know if there is anybody holding his position after he ceased working for the Municipality. *Id.*, at ¶ 29.

Rijos received a letter dated August 20, 2020, notifying him that his contract would not be renewed after August 31, 2020. *Id.*, at ¶ 8. He was sent a letter informing him of the decision via certified mail because he refused to appear at the Municipality to personally receive the letter. *Id.*, at ¶ 66. Rijos understood that his contract was not renewed because the contract ended but understood the decision to be discriminatory. *Id.*, at ¶ 10. However, he has no personal knowledge as to why his transitory employment contract was not renewed. *Id.*, at ¶ 9.

On the same date that the Municipality decided not to renew plaintiffs' transitory employment contracts, the Municipality also did not renew the transitory employment contracts of other employees. *Id.*, at ¶ 64. The transitory employees who were notified by letter dated August 20, 2020, that their transitory employment contracts would not be renewed in addition to plaintiffs were Saraima Canales-Ocasio, Luis Martínez-Kuilan, Maritza Nieves-Díaz, Wilmarie Rodríguez-Negrón, Agustín Silva-Pacheco, Margarita Vázquez-Rosario, and Orlando

Villalobos-Kuilan. *Id.*, at ¶ 65. Rijos has no knowledge as to why those contracts were not renewed. *Id.*, at ¶ 11.

Since August of 2020, the Office of Legal Affairs has not hired anybody to perform the duties carried out by Cotto and Rijos. *Id.*, at ¶ 43.

## C.  Application of Law to Facts

### 1.  Plaintiffs' political discrimination claims.

From the outset, the Court notes that defendants have expressly elected not to challenge at this stage plaintiff's *prima facie* case of political discrimination. **ECF No. 54** at 12. That is, defendants' motion for summary judgment does not aim to dispute "(1) that the plaintiff and defendant have opposing political affiliation, (2) that the defendant is aware of the political affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *García-González v. Puig-Morales*, 761 F.3d 81, 96 (1st Cir. 2014); *Ocasio-Hernández*, 640 F.3d at 13.[7]

Accordingly, defendants' motion is targeted at establishing a "*Mt. Healthy* defense" under *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274 (1977), by which they have the burden of establishing "by a preponderance of the evidence that [they] would have reached the same decision as to [plaintiffs'] reemployment even in the absence of the protected conduct." 429 U.S. at 287; *see also Reyes-Pérez v. State Ins. Fund Corp.*, 755 F.3d 49, 54 (1st Cir. 2014) (citing

---

[7] The Court takes note that defendants do not concede this point on the merits and merely assume it for purposes of their motion. **ECF No. 54** at 12. Accordingly, the Court will not draw any negative inference from their assumption were this case to proceed to trial.

*Mt. Healthy*). With the burden now on them, defendants assert that plaintiffs' contracts "would not have been renewed regardless of their political affiliation or the political candidate they supported." **ECF No. 54** at 12. This is because "the decision was based on the fact that as a result of the COVID-19 pandemic, neither Rijos nor Cotto were providing services to the Municipality or performing their duties in the Offices [sic] of Legal Affairs." *Id.,* at 15.

Before addressing defendants' *Mt. Healthy* defense, the Court will first review the material facts as to whether plaintiffs' political affiliation was a substantial or motivating factor behind the defendants' decision not to renew their contracts. This analysis will inform the Court's decision on the viability of defendants' proffered defense.

### a.   Evidence of a politically discriminatory motivation.

Plaintiffs allude to a series of events occurring prior to their contracts' non-renewal that demonstrate, according to them, that defendants' actions were politically discriminatory.

As to Rijos, plaintiffs begin by pointing to the written admonition he received in July 2018 from Camacho, then an Administrative Assistant in the Mayor's Office, for allegedly neglecting his duties and visiting other departments without valid reasons. **ECF No. 63** at 5. They also point to Rijos' transfer from his initial position in the Mayor's Office to the Office of Legal Affairs, where "his duties were reduced to almost nothing," according to him. *Id.* Plaintiffs suggest that this was due to his role as political campaign director for Márquez's primary challenger, a role he assumed in April of 2018. *Id.*

As to Cotto, plaintiffs point to his recollection of two meetings where his support of Márquez's primary rival was brought up. One allegedly took place in November of 2018 with Márquez, where they discussed Cotto's formal request for a promotion. *Id.*, at 6. There, Cotto recalled Márquez questioning his support for his rival and remarking that he was expecting to be with people who supported him. *Id.* The other meeting was held on June 2019, with Hernández and Municipal Administrator Michael Rivera. *Id.* There, Cotto recalled that Mr. Rivera questioned him about his support for Márquez's primary rival and told him he would not get his promotion because of his "negative attitude." *Id.* Cotto also recalls Mr. Rivera essentially threatening to retaliate against him. *Id.*

Certainly, there is sufficient evidence (and defendants chose not to challenge this in their motion) for the Court to assume at this summary judgment stage that defendants knew of plaintiffs' political support for the mayor's rival. But plaintiffs' story is not an airtight case. For instance, Rijos' transfer to the Office of Legal Affairs occurred more than a year after he assumed his campaign role. **ECF No. 55** at ¶ 3. His salary, moreover, was not reduced. *Id.*, at ¶ 4. And his contract was renewed on a monthly basis throughout 2018 and 2019 and up until August 31, 2020. *Id.*, at ¶ 5; *see also* Tr., Deposition of Mayor Bernardo Márquez-García, **ECF No. 63-5** at 46:18-22.

Likewise, with Cotto, the Court notes that his contract was consistently renewed on a monthly basis after the meetings he described. *See id.*, at ¶ 14; *see also* Tr., Deposition of Mayor Bernardo Márquez-García, **ECF No. 63-5** at 46:18-22. And the Court must note that the only

evidence on record for the allegedly discriminatory comments said during these meetings is Cotto's own testimony. That, by itself, is not fatal; but the Court reviewed the respective deposition transcripts of Márquez, Hernández and Michael Rivera (which were attached as exhibits to plaintiffs' opposition) and found no question from plaintiffs' counsel or mention by the witnesses of these meetings or of Cotto's desired promotion. *See* Tr., Deposition of Mayor Bernardo Márquez-García, **ECF No. 63-5;** Tr., Deposition of Michael Rivera de Jesús, **ECF No. 63-6**; Tr., Deposition of Ángel Ramón Hernández Pérez, **ECF No. 63-14**. While Cotto's sworn deposition testimony is not weightless, the lack of corroboration leaves much to be desired.

In any event, the weaknesses in plaintiffs' political discrimination claim are not directly relevant to the analysis the Court is asked to perform here. They are only relevant inasmuch as they may be sufficient to tilt the scale against accrediting defendants' *Mt. Healthy* defense in the summary judgment stage, where all reasonable inferences favor non-movant.

**b.   Whether defendants have put forth a credible *Mt. Healthy* defense.**

The Court turns now to the substance of defendants' *Mt. Healthy* defense. Defendants posit that the circumstances surrounding the COVID-19 pandemic and related municipal budget concerns justified the across-the-board reduction of idle transitory employees. They first point to the fact that many municipal employees did not work during the early months of the COVID-19 pandemic. **ECF No. 54** at 13; **ECF No. 55** at ¶ 31. Plaintiffs, for example, did not perform any work for the Office of Legal Affairs from March to August of 2020 but nonetheless continued receiving their respective salaries during this period. **ECF No. 54** at 12; **ECF No. 55** at

¶¶ 6, 7, 24, 25, 26, 31, 35, 37, 38. This situation led to a concern within the Municipality that it would not be able to justify the renewal of transitory employment contracts of employees who were either not performing the duties of their positions or not working at all. **ECF No. 54** at 13; **ECF No. 55** at ¶¶ 31, 32. The defendants have stated that at that time, they could not have known whether the CARES Act or the Coronavirus Relief Fund would reimburse the salaries of all transitory employees, which was eventually allowed later in December 2020, but only for employees who were engaged in public safety or public health categories. **ECF No. 54** at 6-7. This then led to Márquez's decision in July of 2020 to task his department directors with identifying those transitory employees in their staff who were either not performing the duties of their positions or not working at all. **ECF No. 54** at 13; **ECF No. 55** at ¶¶ 40, 41, 45, 46, 47, 60. After receiving those recommendations, Márquez made the decision to reduce the number of transitory employees in the Municipality by not renewing the contracts of several individuals, plaintiffs among them. **ECF No. 54** at 14; **ECF No. 55** at ¶¶ 44, 62, 63.

The above justification may very well be enough to defeat plaintiffs' *prima facie* case. But plaintiffs may still "discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." *Reyes-Pérez*, 755 F.3d at 55 (quoting *Padilla-García v. Rodríguez*, 212 F.3d 69, 77 (1st Cir. 2000)) (emphasis removed). And they may do so by pointing to the same evidence used to establish a *prima facie* political discrimination case. *See Reyes-Orta v. Puerto Rico Highway & Transp. Auth.*, 811 F.3d 67, 73 n. 3 (1st Cir. 2016) (citing *Padilla-García*, 212 F.3d at 77-78). That is,

the question becomes whether the non-renewal of plaintiffs' contracts was more likely due to defendants' pandemic-related budgetary concerns than to plaintiffs' support for Márquez's primary challenger.

    With that aim, plaintiffs attempt to discredit the alleged transitory employee reduction decision by pointing to several pieces of circumstantial evidence. In political discrimination cases, "it is rare that a 'smoking gun' will be found… and thus circumstantial evidence alone may support a finding of political discrimination." *Carrasco-Rodríguez v. Torres-Torres*, 197 F. Supp. 3d 325, 336 (D.P.R. 2016) (citing *Lamboy-Ortiz v. Ortiz-Vélez*, 630 F.3d 228, 240 (1st Cir. 2010)). And in plaintiffs' view, this evidence points to defendants' defense as being mere pretext to cover up the politically motivated decision not to renew their contracts.

    Plaintiffs first allege that the budgetary concern related to having idle municipal employees on the payroll was "bogus." **ECF No. 63** at 8. They point to facts such as that Camacho, who was tasked with imparting instructions to the department directors and receiving their recommendations, did everything verbally. *Id.*, at 8; *see also* Tr., Deposition of Michael Rivera-De Jesús, **ECF No. 63-6** at 23:3-18; Tr., Deposition of María T. Camacho-De Jesús, **ECF No. 63-13** at 20:19 to 24:10. They also point to one department director's inability to remember receiving instructions from Camacho as to how to evaluate his staff. **ECF No. 63** at 7; *see* Tr., Deposition of Javier O. Escalera-Flores, **ECF No. 63-2** at 14:10 to 16:1. In addition, plaintiffs bring up the testimony of Ms. Wilda Reyes, an employee of the Municipality's Department of Public Works, who asserted that out of more than twenty transitory employees

in her department, only two were recommended for non-renewal and were chosen because they had behavioral problems. **ECF No. 63** at 8. And finally, plaintiffs utilize certain comments made by Márquez's to the press in 2021 (months after plaintiffs' non-renewal) regarding the Municipality's healthy fiscal status. *Id.*, at 8-9. To wit, Márquez acknowledged those comments in his deposition, which were to the effect that the Municipality wiped out a $27 million deficit and had a surplus in excess of a million-dollar in 2021. *Id.* Plaintiffs ask the Court to infer from such statements that the non-renewal of their contracts was not motivated by the Municipality's healthy finances. *Id.*, at 9.

Plaintiffs posit that the above evidence undermines the credibility of defendants' purported justification for their decision not to renew their contracts. In sum, plaintiffs attempt to establish that some aspects of defendants' *Mt. Healthy* defense do not add up. At the summary judgment stage, the plaintiffs have the advantage as non-movants, deriving the benefit of all reasonable inferences in their favor. Because the Court cannot weigh the credibility of evidence at this juncture, the credibility of defendants' proffered defense hinges on whether there exists a genuine dispute of fact.

Defendants have put forth their testimonies and that of other municipal employees to establish that the Municipality took a reasoned decision to reduce its transitory employee contracts during a time of budgetary uncertainty due to the COVID-19 pandemic. The defendants have also explained that at the time the decision was taken, the Municipality could not have known whether the CARES Act and the Coronavirus Relief Fund would reimburse the

salaries of all transitory employees. Indeed, only in December 2020 were municipalities allowed to reimburse payroll expenses from March to December 2020, but only for employees who were in either the public safety or public health categories. Therefore, the defendants hold that this is a plausible, non-discriminatory reason for the non-renewal of plaintiffs' transitory contracts; a conclusion that, but not for the summary judgment standard of proof, the Court would not be inclined to disagree with.

Nonetheless, plaintiffs have successfully sowed doubt on whether this reason was the motivating factor behind the decision not to renew their contracts, given the alleged occurrence of prior acts of discrimination detailed in their *prima facie* case and the inconsistencies they raise through reasonable inferences. Adding to that, the absence of any documentation attesting to the process used to determine whose contracts would not be renewed necessarily forces the Court to rely on testimonial evidence, whose credibility it is precluded from weighing at this stage. In that vein, it is far from clear from the facts and evidence presented by defendants whether the criteria used by the municipal directors to determine whose contracts would not be renewed was uniformly applied. It may be that each director applied the criteria in a generally consistent manner, but, for example, the testimony of Ms. Reyes as how only two out of more than twenty transitory employees in her department were chosen for non-renewal casts doubt on that proposition (even if such occurrence may be of no consequence to Hernández's determination as to plaintiffs' contracts). At this juncture, the Court is forced to infer that the lack of clarity favors a finding that there is a genuine dispute of fact as to whether the budgetary

concern was the motivating factor behind plaintiff's non-renewal or just a pretext for getting rid of two politically untrustworthy employees.

For these reasons, the Court **DENIES** defendants' request for summary judgment on plaintiffs' political discrimination claims.

### 2. Plaintiffs' claims regarding the timing of their non-renewal under the Puerto Rico electoral law.

Plaintiffs' second cause of action in their amended complaint alleges that defendants' "firing" of plaintiffs violated an "electoral closed season." **ECF No. 16** at 7, ¶ 36. Plaintiffs do not identify any authority for this proposition but allege that said season is comprised by the two months prior and two months after "the elections," and further allege that "public officials are prohibited from promoting, hiring, demoting or firing persons" during said period. *Id.*

Defendants move for summary dismissal of this claim based on the uncontested fact that plaintiffs were notified of their non-renewal before September 3, 2020—two months prior to the Puerto Rico general elections of November 3, 2020. **ECF No. 63-17** at 16, ¶ 8. In support, defendants point to the August 20, 2020 letters directed at all the transitory employees whose contracts were not renewed, which included plaintiffs. **ECF No. 54** at 14; **ECF No. 55** at ¶ 65. Moreover, the Court notes that Cotto received his letter on August 28, 2020. **ECF No. 54** at 5; **ECF No. 55** at ¶¶ 27, 28. As to Rijos, they point to his refusal to receive the letter in person during August and his subsequent receipt of it by certified mail on September 3, 2023. **ECF No. 54** at 3-45; **ECF No. 55** at ¶¶ 8, 66.

Plaintiffs did not oppose defendants' request to dismiss this claim, and their opposing statement of uncontested facts makes no attempt to refute defendants' narrative.

Given the above, the Court is easily satisfied that Cotto's claim should be dismissed, as he was notified of his non-renewal more than two months prior to the general election. Moreover, he also acknowledged receipt of said notification outside that period, leaving no room for any other conclusion.

Disposing of Rijos' claim is slightly more complicated, although ultimately straightforward. It is uncontested that Rijos' contract expired on August 31, 2020. **ECF No. 55** at ¶¶ 5, 8. Thus, Rijos had no expectation of employment beyond that period save for renewal. It is also uncontested that the letter informing Rijos of his non-renewal was dated August 20, 2020, like the rest of the letters sent to the other transitory employees whose contracts were not renewed. **ECF No. 55-2** (copy of letter to Rijos dated Aug. 20, 2020); **ECF No. 55-12** (Statement under Penalty of Perjury of Frances García-Ayala, attesting to authenticity of letter as its custodian). It is also uncontested that Rijos refused to receive his letter personally and that it had to be mailed to him via certified mail. **ECF No. 55** at ¶ 66. According to the allegations in the amended complaint, he received this letter on September 3, 2020. **ECF No. 16** at ¶ 20. Given the above, it would be unreasonable to infer that the date of receipt was the date of his non-renewal. It is therefore uncontested that Rijos' non-renewal was effectuated on or before August

31, 2020, which is outside the two-month period prior to the general elections. Accordingly,

Rijos' claim must also be dismissed.[8]

## IV.    Conclusion

For the reasons explained above, the Court **DENIES** defendants' requests to consider

their motion for summary judgment unopposed (**ECF No. 62**) and to strike the response to the

statement of uncontested material facts, included in defendants' reply (**ECF No. 70**). Further, the

Court **GRANTS IN PART, DENIES IN PART** defendants' motion for summary judgment at

**ECF No. 54** as follows:

- the motion is **DENIED** as to plaintiffs' political discrimination claims under 42 U.S.C.

  § 1983 (**ECF No. 16** at 7, ¶¶ 31-34); but

- the motion is **GRANTED** as to plaintiffs' claims related to termination within the

  Puerto Rico "electoral closed season" (**ECF No. 16** at 7, ¶¶ 35-36), which are

  **DISMISSED WITH PREJUDICE**.

---

[8] Plaintiffs do not cite in either their complaint or their opposition any controlling authority establishing the two-month electoral season prohibition they base their claim on. In their motion for summary judgment, defendants cite to two statutes that apply similar two-month electoral season prohibitions on certain employment actions undertaken by Commonwealth agencies and municipalities: P.R. Laws Ann. t. 3, § 1472i and P.R. Laws Ann. t. 21 § 7244. *See* **ECF No. 54** at 16. The latter of these two, which applies directly to municipalities, has yet to be officially translated to English and defendants did not submit a certified translation thereof, reason for which the Court cannot rely on it. *See Kenyon v. Cedeno-Rivera*, 47 F.4th 12, 19 (1st Cir. 2022) (citing *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008) for the rule that "the parties have an obligation to provide certified translations of any Spanish-language documents on which they rely"). Regardless, Rijos' factual contention that he was dismissed within the two-month period prior to the 2020 election is demonstrably false, and thus, he would not have a claim against defendants under his purported interpretation of the applicable law.

In addition, given their inexcusable neglect, attorneys Stewart-Sotomayor and Mudd are hereby

**ORDERED** to pay $1,000.00 each as a sanction within 14 days of the issuance of this Opinion &

Order. A final settlement conference will be scheduled via separate order.

       **SO ORDERED**.

       At San Juan, Puerto Rico, on this 2nd day of February, 2024.

                               **S/AIDA M. DELGADO-COLÓN**
                               **United States District Judge**